# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

JOSÉ VIERA-MORALES,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 14-1237 (ADC)

## OPINION AND ORDER

By an Opinion and Order, dated February 10, 2017, the Court summarily denied, without subsequent objection, all of the claims raised in petitioner José Viera-Morales's application for habeas relief pursuant to 28 U.S.C. § 2255, except for a claim that his trial attorney, Francisco Acevedo-Padilla ("Attorney Acevedo"), had rendered him ineffective assistance of counsel. *See* **ECF No. 17**. In his surviving claim, petitioner states that Attorney Acevedo falsely induced him to plead guilty by promising that the Court would sentence him to a prison term that would run concurrently with any sentence imposed on the charges pending against him in a state criminal matter. *See* **ECF Nos. 1**, ¶¶ 15, 18-19; **1-1** at 2; **10**, ¶¶ 1-3; *see also* **ECF No. 17** at 11-13. On March 27, 2017, the Court conducted an evidentiary hearing on the claim. The Court now finds that petitioner cannot prevail on the claim because he has failed to establish its basis in fact.

At the evidentiary hearing, the Court heard the testimony of three witnesses: petitioner, Attorney Francisco Acevedo, and Juan R. Acevedo-Cruz ("Attorney Cruz," to distinguish him

from his cousin, Attorney Acevedo), petitioner's trial counsel in the state criminal matter. Based on their testimony and other evidence in the record, the Court hereby finds the following facts.

In late 2010, the United States and Puerto Rico governments were prosecuting petitioner simultaneously, in parallel actions, for serious felony offenses. Attorney Acevedo represented petitioner in the underlying federal drug-conspiracy case, while his cousin, Attorney Cruz, represented petitioner in a local murder-and-weapons case. Petitioner viewed the local case as the more serious. In that case, he had been charged with murder and firearm possession, among other crimes, at a time when there was little public appetite for leniency towards killers and the crime rate in Puerto Rico was soaring to unprecedented heights. The case generated a significant amount of publicity, to the point that the local news media covered it almost every other day. Petitioner faced a sentencing exposure of life imprisonment, and the local prosecutor was unwilling to reduce it by much as part of a plea bargain. Thus, it was important to petitioner to try to secure concurrent sentences, so that any reduction in his local sentence, achieved only through difficult negotiations with the local prosecutor, would not be lost completely upon the imposition of his federal sentence.

However, Attorney Acevedo failed to get the federal prosecutor to agree to recommend concurrent sentencing to the Court as part of a plea agreement. Instead, Attorney Acevedo was only able to get him to agree that the United States would not ask for a consecutive sentence. The agreement was informal and did not become part of petitioner's written plea agreement. In

fact, the plea agreement made no reference to petitioner's pending state case and was silent on how (concurrently or consecutively) the sentence was to be imposed. When Attorney Acevedo presented the federal plea agreement to petitioner, he explained that he fully expected the Court to impose a concurrent sentence upon the plea of guilty because the United States would not be asking otherwise. But Attorney Acevedo also made it clear to petitioner that, under the plea agreement, the Court would have the discretion to impose a different sentence entirely. Indeed, Attorney Acevedo testified that he never promises, guarantees, nor assures a particular sentence to a client. Moreover, those are words, he stated credibly, that he never uses with clients. In recounting his former sentencing expectations, Attorney Acevedo stated that it had simply been his "fair judgment" that the Court would impose a concurrent sentence if petitioner pleaded guilty, and that he had always talked to petitioner about the sentence in terms of "possibilities." Thus, if petitioner believes that he promised a concurrent sentence, petitioner must have misunderstood what he had said. No witness, however, testified to the actual words that Attorney Acevedo had used when telling petitioner about his sentencing predictions.[1]

---

[1] Over the course of successive examinations, the tenor of Attorney Acevedo's testimony changed dramatically. He went from declaring that he did not tell petitioner that petitioner ran a risk of receiving a consecutive sentence, to affirming that he always told petitioner that a concurrent sentence was merely a possibility – albeit a very good one, by his lights – and that the Court would make the ultimate decision about which sentence to impose. When petitioner tried to rehabilitate the former testimony, Attorney Acevedo threw him the slenderest of reeds, agreeing that he did not use particular "words" – namely, "risk" of a consecutive sentence – when advising petitioner of the Court's sentencing discretion.

The Court credits Attorney Acevedo's testimony that he properly informed petitioner that even his best guesses about the Court's ultimate sentence remained just a guess about "possibilities." The Court does not credit his wavering testimony about whether he had told petitioner of the "risk" of a

On November 17, 2010, petitioner pleaded guilty to the top charge in the Superseding Indictment in the federal case – Conspiracy to Possess with Intent to Distribute Cocaine within One Thousand Feet of a Protected Location, 21 U.S.C. §§ 841(a)(1), 846, 860 – before Magistrate Judge Bruce J. McGiverin. During the plea colloquy, petitioner affirmed that he was pleading guilty voluntarily; that the only promises motivating him to plead guilty were contained in his written plea agreement; that he was aware that the Court could lawfully sentence him to up to life imprisonment; that he was further aware that the Court was not obligated to sentence him in accordance with his plea agreement or the expectations of his attorney; and, that he was also aware that the Court could impose a sentence that ran "consecutively to any sentence that [he was] currently serving." Transcript of Change of Plea Hearing at 9-10, 13-17, *United States* v. *Viera-Morales*, No. 07-CR-547-24 (D.P.R. Oct. 11, 2011), **ECF No. 5019** ("Plea Transcript"). Petitioner acknowledged that he had made those earlier affirmations and that he had made them after his conversations with Attorney Acevedo about what his federal sentence might be.

Petitioner did not explain, at any point, why he is now contradicting his sworn statements from the plea proceeding by claiming that Attorney Acevedo had guaranteed him a concurrent sentence. Instead, at the evidentiary hearing, petitioner simply asserted, without elaboration or credibility, that Attorney Acevedo had told him that his federal sentence would be concurrent with his state sentence, that Attorney Acevedo did not advise him that the Court could impose

---

consecutive sentence as indicating anything other than the fact that Attorney Acevedo did not use certain, specific words when informing petitioner of the fact that a concurrent sentence was not guaranteed.

a different sentence, and that, had he known that the Court could impose a consecutive sentence, he would not have pleaded guilty.

Meanwhile, petitioner's local criminal case was proceeding to trial in early February 2011. On the first scheduled day of trial, the front page of the local newspapers proclaimed that there had been 1,100 murders in Puerto Rico in 2010. It was, Attorney Cruz testified with ironic understatement, not a good time for a defendant to go to trial on a murder charge. However, the presiding Judge was not amenable to continuing the case, so petitioner was faced with a difficult dilemma: plead guilty pursuant to an unfavorable plea offer, or go to trial against unfavorable headwinds. Attorney Cruz tracked down the prosecutor and reminded her of the weaknesses in her case in the hope of persuading her to extend a favorable last-minute plea bargain. And, it worked. The local prosecutor stated that, if petitioner pleaded guilty, the Government would recommended a prison sentence of only thirty-seven years.

The local prosecutor's offer provided for consecutive sentences among the murder and weapon counts to which petitioner was to plead guilty. Moreover, the prosecutor refused to recommend concurrency between petitioner's state and federal sentences. Petitioner agreed to the deal. When Attorney Cruz asked petitioner about his upcoming federal sentence, petitioner replied that he had "an agreement for concurrent." Attorney Cruz did not inquire further from petitioner or from Attorney Acevedo, who happened to be in the courtroom at the time. So, on the day of trial, petitioner pleaded guilty to the local charges in exchange for a prison term of

thirty-seven years.  "We were under a lot of pressure that day," Attorney Cruz testified, and a negotiated prison term of thirty-seven years was "more generous" than anything the local prosecutor had ever offered to petitioner.

After petitioner had pleaded guilty in both cases, he wanted the sentencing in his federal case to "be held as soon as possible."  *Id*., **ECF No. 4758**, ¶ 4.  In particular, he wanted the Judge presiding over his local case to impose a sentence that would run concurrently with whatever sentence he was to receive in his federal case.  But that did not happen because both sentencings were postponed, and the federal sentencing ended up being imposed a couple of weeks after the local sentencing.  That outcome was hardly ideal for petitioner because his criminal-history category under the federal Sentencing Guidelines increased in light of the local sentence.  And, when this Court sentenced petitioner to the top of his new Guidelines range, it imposed the sentence to run consecutively to his already-imposed local sentence.

In finding the facts above, the Court declines to credit generally the testimony of any witness at the evidentiary hearing.  Attorneys Acevedo and Cruz, for example, were not generally credible because their testimonies differed in material and irreconcilable respects. On the one hand, Attorney Cruz insisted that, although he and Attorney Acevedo are cousins who represented petitioner in parallel proceedings, he never discussed petitioner's local case with Attorney Acevedo, nor did he coordinate his defense with Attorney Acevedo's.  In fact, Attorney Cruz testified that the wall between Attorney Acevedo and him was so solid that, even though

Attorney Acevedo was in court when petitioner pleaded guilty to the local charges, he did not even try to talk to his cousin about petitioner's expectation of a concurrent sentence in the federal case. On the other hand, Attorney Acevedo testified that he and his cousin worked side-by-side in their defense of petitioner, including in their attempt to get the local court to agree to impose petitioner's local sentence to run concurrently with his federal sentence. Clearly, at least one of those attorneys was either lying or misremembering. Moreover, Attorney Acevedo was hardly forthcoming in his testimony, resorting at times to misleadingly literal interpretations of some of the questions he was posed in an obvious attempt to thread the needle in favor of petitioner. In the end, however, Attorney Acevedo admitted that when he assured and wrote within a statement under penalty of perjury, that he had made "representations" to petitioner that "the sentence imposed in this case would be concurrent with his state incarceration term," *see* **ECF No. 10-1**, ¶ 2, he was simply alluding to his expectations in the case. Attorney Acevedo further admitted that he had (conveniently) omitted from that affidavit that he had warned petitioner that a concurrent sentence was just a possibility and that this Court had the discretion to impose another sentence entirely. In sum, the Court does not generally credit the testimony of either Attorney Acevedo or Attorney Cruz.

Petitioner, meanwhile, lacked credibility for several reasons. First, in the statement he appended to his initial habeas application, he declared that three people had promised him a concurrent sentence were he to plead guilty in the underlying case: the undersigned, Magistrate

Judge McGiverin, and Attorney Acevedo. **ECF No. 1-1** at 2. But in its earlier Opinion and Order, the Court found that "neither the undersigned, nor any other Judge, [had] promised [petitioner] a concurrent sentence." **ECF No. 17** at 10 n.3. The truth now out, petitioner clearly sought, at the evidentiary hearing, to distance himself from his prior claims, but the only reason he could muster for why he had stated something so false was that, at the time, he was "confused." So confused, he would have the Court believe, that he apparently imagined the undersigned and Magistrate McGiverin promising him a concurrent sentence, when we did not, as the record clearly shows. Petitioner now wants the Court to credit him when he asserts that Attorney Acevedo also guaranteed him a concurrent sentence. That, the Court will not do. After all, Attorney Acevedo specifically stated, under oath, that he had made no promises, provided no assurances, and did not guarantee a concurrency between the state and federal sentences.

Second, petitioner's demeanor on the stand did not lend him much credibility. His short staccato responses did not appear to draw upon any personal memories of events of more than six and one-half years ago, but seemed, instead, to come from a simple and easy playbook: assert that Attorney Acevedo had mislead him, deny that the warnings of the Court or of others about the Court's sentencing discretion had any impact on him, and dismiss as a confusion any related claim he had raised in his habeas application.

Third, and finally, petitioner has not provided the Court with a "good reason for disregarding" the sworn statements he made to the Court when pleading guilty. *See United*

*States* v. *Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016) (per curiam) (quoting *United States* v. *Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011)).  Accordingly, the Court finds that petitioner is "bound by the representations that he himself ma[de] in open court at the time of his plea." *United States* v. *Gates*, 709 F.3d 58, 69 (1st Cir. 2013) (citing *United States* v. *Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003); then citing *United States* v. *Butt*, 731 F.2d 75, 80 (1st Cir. 1984)).  After all, "such statements 'are more likely to be reliable than later versions prompted by second thoughts.'" *Id*. at 70 (quoting *Padilla-Galarza*, 351 F.3d at 598).  And, in those earlier statements, as recounted above, petitioner swore that no promises except those set forth in his written plea agreement (which did not promise him a concurrent sentence) had motivated him to plead guilty, that he was aware that the Court could sentence him to up to life imprisonment, and that he knew that the Court could sentence him contrary to his expectations or those of his lawyer.  Thus, the Court generally declines to credit petitioner's testimony at the evidentiary hearing.

As should now be clear, based on the Court's findings of fact, petitioner does not have any basis for his surviving habeas claim.  The Court has found that Attorney Acevedo properly told petitioner that, although counsel was expecting and to request that the Court would impose a concurrent sentence upon petitioner's guilty plea, the Court had the discretion to do otherwise.  Moreover, the Court has credited petitioner's sworn declarations at the plea colloquy that he was pleading guilty based only on the promises in his written plea agreement and with full knowledge that the Court's ultimate sentence might differ from his lawyer's expectations.  The

Court also credits petitioner when he swore, in open court during his plea colloquy, that he was fully aware that he would not be able to withdraw his guilty plea simply because the Court sentenced him to a harsher sentence than he had anticipated. *See* Plea Transcript at 10. Thus, the Court finds that petitioner was duly aware of the sentencing risks he would face by pleading guilty.

In the end, the facts show that petitioner's real, unexaggerated complaint against his trial counsel is not that counsel had promised or guaranteed him a concurrent sentence – which, the Court has found, counsel did not – but that Attorney Acevedo had shared, at all times, his strong expectations that the Court would exercise its discretion to impose a concurrent, instead of a consecutive, sentence upon petitioner's guilty plea. But "[a]n attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test." *Moreno-Espada* v. *United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *United States* v. *LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997)); *see also Knight* v. *United States*, 37 F.3d 769, 775 (1st Cir. 1994) (citing cases). After all, petitioner knew that the Court could render a different sentence, even a life sentence. Accordingly, petitioner has failed to show that Attorney Acevedo provided him with ineffective assistance of counsel or that his guilty plea was invalid or defective in any way.

Finally, in the supplement to his habeas application, petitioner contends that his Rule 11 colloquy did not disabuse him of "the legal advice he [had] received concerning the concurrency

of his future state and federal sentences." **ECF No. 10** at 4.  Because the Court has already found that Attorney Acevedo's advice was proper, petitioner's complaint is moot.  However, at the evidentiary hearing, petitioner's counsel seemed to argue, at one point, that the Rule 11 colloquy was still defective because it did not specifically warn petitioner that the Court could impose a sentence that would run consecutively to a state sentence that, at the time of the plea, had not yet been imposed.  *Cf.* Plea Transcript at 16 ("I advise you that any sentence imposed in this case may be imposed to run either concurrently or consecutively to any sentence you're currently serving.").  That argument is mistaken.  After all, "at the time of the plea, it was anybody's guess whether [this Court] would opt to impose the sentence concurrently or consecutively." *United States* v. *Ocasio-Cancel*, 727 F.3d 85, 90 (1st Cir. 2013).  Since "a consecutive sentence was neither automatic nor definite in the circumstances of this case, it was not a direct consequence of the [petitioner's] guilty plea." *Id*.  Thus, the Court "had no obligation to inform the [petitioner], at the change-of-plea hearing, about the possibility that a consecutive sentence might be imposed." *Id*. (citing *United States* v. *Hernández*, 234 F.3d 252, 256 (5th Cir. 2000)).

In sum, the Court hereby **DENIES** petitioner's surviving claim for relief.  Together with the Court's prior Order at **ECF No. 17**, the Court now **DENIES** in full petitioner's supplemented application for relief pursuant to 28 U.S.C. § 2255.  *See* **ECF Nos. 1**, **10**.  The Clerk of Court shall enter judgment accordingly.

When entering a final order adverse to a Section 2255 petitioner, the Court must decide whether he merits a certificate of appealability. The Court may issue a certificate only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Jennings* v. *Stephens*, 135 S. Ct. 793, 802 (2015). No such showing was made here. Thus, the Court will not grant petitioner a certificate pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings. Petitioner may still seek a certificate directly from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22(b)(1).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**